**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Douglas Eugene WILSON, Defendant–Appellant.**

**No. 09CA1073.**

Colorado Court of Appeals, Div. II.

June 23, 2011.

---

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Alison Ruttenberg, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

In this postconviction proceeding, the primary issue is whether the federal constitution, as interpreted in *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), requires state trial courts to employ a particular test to determine a defendant's mental competency to waive counsel and represent himself at trial or, instead, courts need only determine mental competency to stand trial under the standards set forth in

*Godinez v. Moran,* 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). We reject the contention of defendant, Douglas Eugene Wilson, that *Edwards* requires a different standard. We also decline to address defendant's contention that he was mentally incompetent to stand trial, because he could and should have raised that issue on direct appeal, and thus his claim here is successive. We further reject defendant's contention that his attorneys were ineffective for failing to request a competency determination before they withdrew from representing him. Accordingly, we affirm the postconviction court's order denying defendant's Crim. P. 35(c) motion without a hearing. We also deny defendant's pro se motion requesting that new appellate counsel be appointed or, alternatively, that he be permitted to represent himself in this appeal.

## I. Background

In September 2001, the prosecution charged defendant with first degree murder. The court appointed attorneys from the Public Defender's office to represent him. In December 2001, when defendant claimed that a conflict existed with these attorneys, the trial court held a hearing on the matter and rejected the claim. When defendant nevertheless insisted upon appointment of new attorneys, the court responded that he could either be represented by the appointed attorneys or represent himself. After the court advised defendant of the risks and disadvantages of self-representation pursuant to *People v. Arguello,* 772 P.2d 87 (Colo.1989), defendant waived his right to representation and chose to proceed pro se, effective December 10, 2001. The court appointed attorney R.W. as advisory counsel.

At a hearing on January 14, 2002, defendant appeared at times confused and became argumentative. The next day the trial court, over defendant's vigorous objection, ordered a competency evaluation.

In March 2002, after evaluating defendant and adjusting his medications, a doctor at the Colorado Mental Health Institute in Pueblo (CMHIP) opined that defendant was competent to stand trial. In April 2002, based on this evidence, the trial court found defendant competent to proceed. At a hearing nine days later, defendant asked that R.W. be appointed to represent him. The trial court did so.

In February 2003, about one month before his scheduled trial date, defendant accused R.W. of using drugs and requested new counsel. The trial court did not find the allegations to be true but nevertheless determined that an actual conflict existed and allowed R.W. to withdraw. The court appointed attorney S.M. to represent defendant and continued the trial date to allow time to prepare a defense.

In December 2003, about one month before his rescheduled trial, defendant accused S.M. of failing to communicate with him. The trial judge (Judge Kane) requested a different judge (Judge Martinez) to hear the matter. On December 11, 2003, Judge Martinez determined that S.M. had not failed to communicate with defendant and therefore no conflict existed.

On December 16, before Judge Kane, defendant again requested appointment of a new attorney. The court responded that defendant could either be represented by the appointed attorney or represent himself. The court advised defendant of the risks and disadvantages of self-representation pursuant to *Arguello,* and defendant stated that he still wished to proceed pro se. However, defendant also made additional allegations of misconduct against attorney S.M. Accordingly, Judge Kane set another conflict hearing before Judge Martinez and delayed ruling on defendant's request.

At a hearing on December 18, 2003, Judge Martinez determined that no conflict existed and refused to appoint a different attorney. Defendant stated that he wanted to represent himself. Judge Martinez gave an *Arguello* advisement and defendant stated that he understood the risks but nonetheless wanted to represent himself. Among other inquiries, Judge Martinez asked defendant if he was under the influence of any medications. Defendant answered that he was on medications to control epilepsy. The following colloquy then ensued:

THE COURT: Do [your medications for epilepsy] affect your ability to think clearly?

MR. WILSON: No, I am quite competent and in full control of my faculties, each and every one.

After completing the *Arguello* advisement, Judge Martinez stated:

[T]he Court will find that the defendant is making a knowing, intelligent waiver of his rights to be represented by counsel and that he will be able to present his own defense.

The same day, Judge Kane held another hearing on defendant's request to proceed without an attorney. After referencing his earlier *Arguello* advisements, Judge Kane asked defendant if it was still his decision to represent himself. Defendant responded:

Yes, it is, Your Honor, and I will have control of all my faculties. . . . I do understand my rights and I am in control of my faculties. I am not under any mind altering drugs. And it is my desire to dismiss counsel. . . .

Judge Kane then found:

I am persuaded Mr. Wilson has made a knowing, informed decision to represent himself, that he understands the disadvantage of representing himself, that it is his desire to, despite those disadvantages, to represent himself, and he has that right. I am persuaded that this is a knowing, informed decision made intelligently, and I am going to allow current counsel . . . to withdraw. Mr. Wilson will represent himself.

. . .

I will find this is [a] voluntary decision on his part, and I find that Mr. Wilson is competent to make this decision. His comments in court are on point. He has been evaluated for competency to proceed, much, much to his dismay, or over his objection, when it happened. I am persuaded he is competent.

The court continued the trial date to May 10, 2004, and defendant represented himself until May 4, 2004, when he asserted that he was not competent to present his case at trial. Defendant requested an evaluation for competency and appointment of counsel to represent him in the case. The trial court ordered a second competency evaluation and again continued the trial.

In June 2004, a CMHIP doctor opined that defendant was incompetent to stand trial because jail personnel had dropped Trileptal from his medication regimen. The trial court, based on this evidence, determined that defendant was incompetent to proceed to trial.

In September 2004, the CMHIP doctor opined that defendant had been restored to competency, so long as he took certain prescribed medications, including Trileptal. The trial court then found defendant competent to proceed.

Later that same month, defendant asserted that his competency was being negatively affected because medical personnel at the jail had changed his medication and had also administered it in a crushed form, rather than in solid pill form. The trial court conducted a lengthy hearing, which included testimony from the CMHIP doctor who prescribed the medications, and from the medical personnel at the jail. It heard testimony that administration of Trileptal in crushed form would not affect defendant's competency. Nevertheless, it ordered jail personnel to administer the medication in pill form. The court determined that jail personnel were administering the correct medications to defendant and found him competent to proceed because he was taking the correct medications. In addition, it found:

I'm also persuaded that Mr. Wilson remains competent by his presence here. He has made a presentation for himself. He has been oriented to the issues and oriented to the presentation of testimony and to the issues that are before the Court.

At the end of the hearing, defendant requested the court to appoint attorney C.M., who was representing him in another case, to represent him in this case. C.M. was not available for the scheduled trial date and the court thus declined to appoint her. Defendant requested another attorney. The trial court stated that it did not believe it could find another attorney to handle the case

within speedy trial limits. It asked defendant if he was willing to waive his right to a speedy trial so that another attorney could be appointed. Defendant stated that he did not wish to continue the trial beyond the speedy trial period. The court set the trial for the end of November 2004.

In an early October 2004 hearing, defendant asserted that he had been incompetent when he waived his right to counsel in December 2003. The trial court declined to address the matter at the hearing and ordered defendant to present his argument in a written motion so that the prosecution could respond. Defendant did not do so.

Defendant represented himself at trial, assisted by an investigator. Advisory counsel was present two days during the ten-day trial. The jury returned guilty verdicts for first degree murder and a crime of violence sentence enhancer. A division of this court affirmed the judgment of conviction on appeal, where defendant was represented by counsel. *People v. Wilson*, No. 05CA0189, 2008 WL 383525 (Colo.App. Feb. 14, 2008) (not published pursuant to C.A.R. 35(f)).

Defendant, through current counsel, then filed the present Crim. P. 35(c) motion. He asserted that: (1) he needed to be given certain medications, including Trileptal, to be competent to stand trial and to waive his right to counsel; (2) he was not taking appropriate medications when he purported to waive counsel; (3) even if he were competent to stand trial, he was not competent under *Indiana v. Edwards* to represent himself at trial; and (4) his trial counsel were ineffective because they failed to request a competency evaluation before they withdrew in December 2003. Defendant also filed his own pro se postconviction motion, alleging various errors at trial.

The postconviction court (again Judge Kane) denied the pro se motion without a hearing, finding that the allegations were successive. It denied counsel's motion without a hearing, concluding that the record contradicted the claims raised in it.

Specifically, the court found that it had given *Arguello* advisements and had observed defendant in person at the hearings.

It concluded that defendant had knowingly and intelligently waived his right to counsel. It also noted that defendant had filed pro se pleadings and it determined that those pleadings were rational and oriented to the issues of the case. The court did not address the ineffective assistance of counsel claim.

Defendant has appealed only the denial of the Crim. P. 35(c) motion filed by counsel.

## II. Competency

Defendant contends that he is entitled to an evidentiary hearing to present evidence that he was mentally incompetent to waive his right to counsel. We conclude that this claim is successive.

### A. Standard of Review

█ We generally review de novo the denial without a hearing of a Crim. P. 35(c) motion. *People v. Long*, 126 P.3d 284, 286 (Colo.App.2005).

### B. Law and Application

In accordance with Crim. P. 35(c)(3)(VII), a court must deny any claim that could have been presented in an appeal previously brought.

█ Here, on direct appeal, defendant could have, but did not, seek review of the trial court's conclusion that he was competent to stand trial and to waive his right to counsel, and that he had knowingly and intelligently waived his right to counsel. He asserts, however, that he could not do so because he was mentally incompetent and did not make a sufficient factual record of these issues for appellate review on direct appeal. We reject these contentions for three reasons.

First, defendant was represented by counsel on his direct appeal. Accordingly, even if we assume, without deciding, that defendant personally was incompetent, that would not have precluded counsel from raising the issue. Moreover, counsel was not bound by the issues stated in defendant's notice of appeal, because the notice is advisory only. *See* C.A.R. 3(g)(4). In addition, counsel had access to the record before filing the opening

brief, in which the stated issues for review first became binding. *See* C.A.R. 28(a).

Second, the record contains all the reports from CMHIP, transcripts of the various hearings on defendant's competency, and information about the effect of medications (or lack thereof) upon him. We do not discern what additional information defendant would have included in the record.

Third, during the more than two years between being charged in September 2001 and waiving his right to counsel in December 2003, defendant was actually represented by attorneys (with the exception of at most two months), and he does not now contend that such counsel were ineffective during that period (except as to failing to request a competency determination, addressed below).

We accordingly conclude, albeit on grounds different from those relied upon by the postconviction court, that the court properly denied this portion of defendant's motion. *See* Crim. P. 35(c)(3)(VII); *People v. Vondra*, 240 P.3d 493, 494 (Colo.App.2010) (applying Crim. P. 35(c)(3)(VII) on appeal to preclude successive claim although postconviction court did not rely on that provision).

### III. *Edwards* Standard of Competency

■ Defendant contends that, even if he was competent to proceed to trial, *Edwards* recognizes a difference between mental competency to stand trial and mental competency to represent oneself at trial, and constitutionally requires applying a heightened standard for the latter. He asserts that the postconviction court failed to consider *Edwards* and apply it to this proceeding. He also contends that he was not mentally competent to represent himself at trial under the *Edwards* standard and, thus, he must be accorded a new trial. We disagree with defendant's reading of *Edwards*.

### A. Standard of Review

Because it presents a question of law, we review de novo whether different standards of competency apply in this case. *See People v. Day*, 230 P.3d 1194, 1196 (Colo.2010) (appellate courts review questions of law de novo).

If *Edwards* establishes a new or different standard, it would apply here because that case was announced while defendant's direct appeal was still pending on certiorari to the Colorado Supreme Court. *See DeBella v. People*, 233 P.3d 664, 666 (Colo.2010) (court will apply its new precedent to a case pending on direct appeal); *Lopez v. People*, 113 P.3d 713, 716 (Colo.2005) (a decision of the United States Supreme Court is to be applied in cases that are pending on direct appeal when the opinion is announced).

### B. Law and Analysis

■ A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel unless he does so competently and intelligently. *Godinez*, 509 U.S. at 396, 113 S.Ct. 2680.

A defendant is competent to stand trial when he

> does not have a mental disability or developmental disability that prevents [him] from having sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding in order to assist in the defense or [that] prevents [him] from having a rational and factual understanding of the criminal proceedings.

§ 16-8.5-101(4), C.R.S.2010; *see Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *People v. Palmer*, 31 P.3d 863, 865-66 (Colo.2001).

■ A defendant is competent to waive his constitutional right to counsel if he (1) is able to consult with his lawyer with a reasonable degree of rational understanding, and (2) has a rational and factual understanding of the proceedings against him. *Godinez*, 509 U.S. at 396, 113 S.Ct. 2680. In other words, a defendant must have a factual understanding of the proceedings; he must be properly oriented as to time, place, and person; and his perceptions and understandings must be rational and grounded in reality. *People v. Mondragon*, 217 P.3d 936, 940 (Colo.App. 2009).

■ Once a defendant validly waives his right to counsel, he has no unconditional right to withdraw the waiver. *See People v. Lucero*, 200 Colo. 335, 340-41, 615 P.2d 660,

663 (1980) ("[o]nce having elected to represent himself, the defendant cannot thereafter whipsaw the court between his constitutional right of self-representation and his own ineffectiveness at trial"); *People v. Price,* 903 P.2d 1190, 1193 (Colo.App.1995) ("a trial court is not compelled to grant a criminal defendant's request to withdraw a valid waiver of the right to counsel, but must exercise its discretion in evaluating the circumstances surrounding the request").

In *Edwards,* the state trial court had found the defendant mentally competent to stand trial if represented by counsel but not mentally competent to conduct the trial by himself. It had therefore denied the defendant's request to represent himself. The Supreme Court framed the issue on appeal as whether the Constitution prohibits a state from insisting that the defendant proceed to trial with counsel, thereby denying him the constitutional right to represent himself. The Court concluded that the Constitution did not forbid such a process. 554 U.S. at 167, 128 S.Ct. 2379. In its analysis, the Court looked to its prior precedents, including *Dusky* and *Godinez,* and noted that *Godinez* had "reject[ed] the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the *Dusky* standard." *Edwards,* 554 U.S. at 172, 128 S.Ct. 2379 (quoting *Godinez,* 509 U.S. at 398, 113 S.Ct. 2680).

The Court also made the following statement, upon which defendant relies:

[T]he nature of the problem before us cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself. Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways.... In certain instances an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry

out the basic tasks needed to present his own defense without the help of counsel. *Edwards,* 554 U.S. at 175–76, 128 S.Ct. 2379.

We reject defendant's contention that this language in *Edwards* requires a heightened level of competency before a defendant may waive counsel and elect to represent himself. We recognize that the Supreme Court in *Edwards* drew a distinction between a defendant who is mentally competent to stand trial and a defendant who is mentally competent to conduct trial proceedings. The Court, however, held that the Constitution merely *permits* a state to force representation upon a defendant who falls within this "gray area." *Id.* at 172, 177–78, 128 S.Ct. 2379; *see also United States v. DeShazer,* 554 F.3d 1281, 1289–90 (10th Cir.2009) (holding that *Edwards* permits, but does not require, forced representation of defendants who are competent under *Dusky* but incompetent to conduct trial proceedings). *Edwards* did not hold that the Constitution *requires* such a result. *Edwards,* 554 U.S. at 177–78, 128 S.Ct. 2379; *DeShazer,* 554 F.3d at 1289–90. To the contrary, *Edwards* reaffirmed the holding of *Godinez,* which states that the Constitution requires only the *Dusky* standard of competency to be met. *See Edwards,* 554 U.S. at 173, 128 S.Ct. 2379; *United States v. Ferguson,* 560 F.3d 1060, 1070 n. 6 (9th Cir.2009); *DeShazer,* 554 F.3d at 1290.

Defendant relies upon several state court cases for his contention that *Edwards* sets a higher standard for competence to conduct a defense without assistance of counsel. We conclude that defendant misreads those cases.

In *People v. Esang,* 396 Ill.App.3d 833, 841, 336 Ill.Dec. 356, 920 N.E.2d 565, 572 (2009), the court held that the defendant's waiver of his right to counsel was not intelligently made because the trial court had repeatedly expressed concern about his mental state and thus a bona fide doubt existed regarding his competency. After so holding, the court noted that "[i]t has now explicitly been held that a defendant may be competent to stand trial while at the same time incompetent to represent himself," citing *Edwards. Id.* However, the Illinois court did not read *Edwards* or the Constitution to

require such a distinction. Instead, it noted only that "in such circumstances, [a defendant] suffers no constitutional injury from a trial court's refusal to permit him to represent himself." *Id.*

In *State v. Connor*, 292 Conn. 483, 511, 973 A.2d 627, 646 (2009), the Connecticut Supreme Court first acknowledged *Godinez*'s holding that the competency standard for waiving counsel is no higher than the competency standard for standing trial. That court, however, then concluded that *Edwards* allowed it to adopt a competency standard that differed from the standard for determining whether a defendant is competent to stand trial, which the court did. 292 Conn. at 517, 973 A.2d at 650. But the court specifically recognized that "*Edwards* does not mandate the application of such a dual standard of competency for mentally-ill defendants." *Id.*

*State v. Lane*, 362 N.C. 667, 669 S.E.2d 321 (2008), *clarified*, 706 S.E.2d 775 (N.C.2009), does not hold differently. In a per curiam disposition, the court simply remanded the case to the trial court to determine whether, at the time the defendant sought to represent himself, he was competent enough to stand trial but was not competent to conduct trial proceedings by himself. If the trial court answered affirmatively then, "[g]iven that the United States Constitution permits judges to preclude self-representation ... the court shall consider whether the court in its discretion would have precluded self-representation for defendant and appointed counsel for him pursuant to *Indiana v. Edwards*." 362 N.C. at 668, 669 S.E.2d at 322. The court did not hold that *Edwards* requires a different standard.

Nor does *Arguello* affect our reasoning. In that case, decided in 1989, the Colorado Supreme Court quoted *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir.1987), for the proposition that the "degree of competency required to waive counsel is 'vaguely higher' than the competency required to stand trial." *Arguello*, 772 P.2d at 96. However, both *Arguello* and *McDowell* were decided before *Godinez*, which, as noted above, clarified that the Constitution does not require a different standard.

Accordingly, *Edwards* does not require the application of a different standard to determine whether defendant was mentally competent to waive counsel and present his case at trial.

Therefore, we need not address whether defendant was entitled to a hearing to present evidence that he was incompetent under any heightened standard, including evidence of his alleged difficulty maintaining concentration and communicating during the trial as a result of the administration of Trileptal in crushed form.

### IV. Ineffective Assistance of Counsel

Defendant contends that his counsel were ineffective because they withdrew without first requesting a competency hearing for him. We disagree.

### A. Standard of Review

Defendant's ineffective assistance of counsel claim is not barred as successive. Crim. P. 35(c)(3) (VIII); *Vondra*, 240 P.3d at 494.

■ A court may deny without a hearing a motion for postconviction relief where the motion, files, and record in the case establish that the defendant's allegations are without merit and do not warrant postconviction relief. Crim. P. 35(c)(3)(IV); *Ardolino v. People*, 69 P.3d 73, 77 (Colo.2003). Thus, summary denial is appropriate where the existing record establishes that the defendant's allegations, even if proven true at an evidentiary hearing, would not provide a basis for relief. *Ardolino*, 69 P.3d at 77.

### B. Law

To prevail on a claim of ineffective assistance of counsel, a defendant must show that, in light of all the circumstances, the identified acts or omissions of counsel were outside the wide range of professionally competent assistance. *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Davis v. People*, 871 P.2d 769, 772 (Colo.1994). An error by counsel only justifies reversal of a conviction if the defendant was prejudiced by it. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *Davis*, 871 P.2d at 772.

## C. Application

Here, even if counsel erred in failing to request a competency evaluation before they withdrew in 2003, defendant was not prejudiced because the record reveals that he was competent when he waived his right to counsel.

As noted previously, in December 2003, two judges each conducted two separate hearings, during which defendant made oral presentations regarding the performance of his attorneys and his desire and ability to proceed without counsel. Each judge then found that he was competent and that he made his waiver knowingly and intelligently.

During the hearings, defendant responded appropriately, made cogent arguments, and was aware of the nature and course of the proceedings. He was properly oriented as to time, place, and person, and his perceptions and understandings were grounded in reality. Defendant specifically asserted to Judge Martinez that he was competent, and Judge Martinez stated that defendant would "be able to present his own defense." Defendant told Judge Kane that he had control of all his faculties and was not under the influence of any mind-altering drugs.

In one colloquy, after deciding to proceed without counsel, defendant requested appointment of advisory counsel and an investigator to assist him in preparing his defense. Judge Kane replied that it might not be possible to secure funding for such assistance. In response, defendant argued that the court should be able to secure such funding because the state no longer had to pay for the counsel he was giving up. This example and others in the record show that defendant had the ability to understand the factual nature of the proceedings against him and also the ability to form a rational understanding of the choice he was making by proceeding pro se.

We acknowledge that, in May 2004, defendant was found incompetent to proceed. However, he was restored to competency in September 2004, and at a later hearing, Judge Kane said: "[I am] persuaded that Mr. Wilson remains competent by his presence here. He has made a presentation for himself. He has been oriented to the issues and oriented to the presentation of testimony and to the issues that are before the Court." We reach the same conclusion.

Defendant nevertheless contends that, at a postconviction hearing, he would have presented evidence that the lack of medication left him unable to communicate effectively, unable to focus while preparing his case, and overwhelmed with the administrative details of handling his defense. But even if true, this evidence would not contradict the finding of the trial court and the conflicts court that he had a rational understanding of the proceedings against him at the time he waived his right to counsel. Nor would it persuade us otherwise on de novo review.

In addition, defendant contends that he would have presented evidence that his accusation in February 2003 of drug use by attorney R.W. was the product of a paranoid delusion. We note however, that mental illness can vary in degree and over time. *Edwards*, 554 U.S. at 175, 128 S.Ct. 2379. Thus, even if defendant's allegation of delusions in February 2003 were true, it would not preclude the determination that he was competent in December 2003 and in September 2004. The record reveals no evidence of delusional behavior at such times, and defendant does not contend that he would have produced any specific evidence of such behavior if granted an evidentiary hearing.

Finally, defendant contends that he would have presented evidence that jail personnel did not administer Trileptal in December 2003 and that the lack of that medication generally affected his competence. But even if that medication were not administered, and even if the lack of that medication generally affected his competence, those facts do not overcome the conclusion that defendant had the ability to form a rational understanding of the proceedings on the day that he waived counsel. *See id.*

To the extent that defendant contends his counsel were ineffective when they withdrew in December 2001 without requesting a competency determination, we also reject that contention. Defendant remained unrepresented for a short time, appeared pro se at only one hearing, which concerned relatively

minor matters, and was appointed an attorney upon his later request. The record does not reveal prejudice of any kind during that brief period. Indeed, the record shows that, at the January 2002 hearing, the only one held while defendant was unrepresented, the parties discussed matters such as the method for providing discovery to defendant and whether the prosecution could, under the ethical rules, speak directly with defendant as a pro se litigant.

We therefore conclude the record establishes that defendant's allegations, even if true, do not demonstrate prejudice. Accordingly, the postconviction court properly denied this claim without a hearing, and the failure of the court to address the ineffective assistance claim is therefore harmless. *See People v. Hartkemeyer*, 843 P.2d 92, 93 (Colo.App.1992).

## V. Defendant's Pro Se Request for New Appellate Counsel or to Proceed Pro Se on Appeal

Before oral argument in this case, defendant moved for appointment of new appellate counsel to represent him or, in the alternative, for permission to represent himself. We denied the motion, indicating we would set forth our rationale in this opinion.

### A. Law

■ An indigent defendant has no federal or Colorado constitutional right to representation in postconviction proceedings, but has a limited statutory right. *Silva v. People*, 156 P.3d 1164, 1168 (Colo.2007). Before a substitution of counsel is warranted, a court must establish that the defendant has "some well founded reason for believing that the appointed attorney cannot or will not completely represent him." *People v. Bergerud*, 223 P.3d 686, 694 (Colo.2010) (quoting *Arguello*, 772 P.2d at 94). This determination is laden with factual questions, but where, as here, the motion and responses are sufficiently detailed, we need not conduct a hearing to examine them. *See Bergerud*, 223 P.3d at 694.

### B. Application

■ Defendant first contends that he is entitled to new counsel because he disagrees with the choice of issues raised by his attorney. Based on our review of the record, we conclude that counsel's tactical decision regarding which issues to assert on appeal is reasonable. Many of the issues defendant wishes to raise were or could have been raised and resolved in his direct appeal, and thus they would have been successive in this proceeding, under Crim. P. 35(c)(3)(VI)-(VII).

■ Defendant also asserts that he plans to bring a civil action against his attorney at a later date. Such threatened action does not create an actual conflict. *See United States v. Moore*, 159 F.3d 1154, 1158 (9th Cir.1998). Moreover, even if bringing such an action could create a conflict of interest, there is no indication from the materials filed in this court that defendant has already brought such an action.

We therefore conclude that defendant has no well-founded belief that his attorney could not or would not completely represent him in this matter.

■ Concerning defendant's request to represent himself, the Supreme Court has held that a criminal defendant has no federal constitutional right to self-representation on a direct appeal from a criminal conviction. *Martinez v. Court of Appeal*, 528 U.S. 152, 163, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000). In light of that holding, it is clear that a criminal defendant likewise has no constitutional right to self-representation when appealing an adverse decision in a collateral attack on his conviction. *See In re Barnett*, 31 Cal.4th 466, 475, 3 Cal.Rptr.3d 108, 73 P.3d 1106, 1112-13 (2003) ("it is logical to conclude that if there is no federal constitutional right to self-representation in a state appeal as of right ... then there is no such constitutional right in state collateral proceedings").

The order is affirmed and the motion is denied.

Judge DAILEY and Judge WEBB concur.